Nexstar Council. Council, you may begin. Yes, good morning, Your Honor. And good morning, Your Honors. I'm Charles Bouch, Associate Counsel for Nexstar Media Group, presenting our position on two charges that were filed by the union in 2018, May 2018. And I'm starting at a different point in the case than where we started any of our briefs previously. All of the briefs that we've submitted, we left for last the argument of deferral. We're arguing, essentially in this case, that three years ago, this case should have been deferred to arbitration under existing law. We're going to address the other issues that are present in the case. But three years ago, this case should have been submitted to the Nolde brothers and concepts developed in the Collier Doctrine, United Technologies, but for the fact that it wasn't due to the fact that the contract had expired. Parties were in the middle of negotiations. The contract had been allowed to expire. And yet we believe under Nolde brothers and under a proper reading of Lytton, the contract provisions regarding arbitration should have persisted and dealt with the two issues that were involved here or two changes. Let me ask some questions about that. We start from the premise that the term of the contract had expired, correct? Yes. Yes, Your Honor. As was true in Lytton. Would the arbitration have conserved rights or obligations vested under the CBA? That's our contention. I mean, there's... I know it is. Tell me why. Because if you look at the two cases that have dealt with this issue by the Supreme Court, you have Nolde brothers which dealt with severance rights. Severance that, you know, arguably vested under the agreement. You had to pay it whether the agreement had ended or not. That's right. And Lytton dealt with, on the other hand, the issue of of seniority privileges under the layoff clauses. And a very narrow decision, five to four, very closely contested. This court in that case held that the rights had vested. And that there was seniority. It turned out, not that we were wrong, but the five justices on the Supreme Court thought we were wrong. That's right. But still, I'm still having trouble. What's the vested right that should have been arbitrated here? In this case, I believe there's a vested right related to the advance scheduling of these employees. Schedules have been deemed to be very important in the state of Oregon. We cited in our brief an Oregon statute that has been passed recently that's applicable to employers of 500 or more, guaranteeing the right to an advance schedule. It's a significant right. I don't think the union in this case would have raised the right if it wasn't deemed to be significant. No, I think it's significant, but the question is whether it vested. It seems to me, and I think this goes back to your merits argument, the question is whether or not the agreement gave you the right after the expiration to make unilateral changes in these two areas. And you know what the two areas are, so you can repeat them. So isn't that the same question? Doesn't the answer to that question answer whether or not if you didn't have a continuing right to do these things, then you didn't have a vested right. Well, I think that's true. I think under all the standards, there's our argument is that the contract doesn't vanish. NLRB is arguing and in their case that in a sense the contract, once it expires, it's gone. Well, the law is clear. The status quo is to be maintained. The status quo is to be observed. We're obligated to observe it. There's case law. Clearly, it's indicating that we need to be very careful with respect to the contract. So that's why we believe, and going to the other issue that the board ruled against us on in terms of whether the contract covered standard applies, the contract, the D.C. circuit would say, I think their decisions have to be fairly read on this. They would say the contract doesn't evaporate. It's still there. That's the barometer. Everybody agrees the contract doesn't evaporate to the extent it imposes obligations or rights after the date of its expiration. If it doesn't, then we default to whatever the status quo was on the day the contract ended. I think everybody agrees as to that. What I'm having trouble understanding is your argument that the contract expressly gave you the right to do these things after its expiration. It clearly gave you the right to do them, at least one of them, probably both of them, during its term. But how can I read the contract as extending your right to make these changes post-expiration? I think the clause that does that the most clearly is the entire agreement clause of the contract. Because it talks in terms of that this is the entire agreement. This is what the parties have concluded on. I think that persisted. That worked essentially from a contractual standpoint. That worked a waiver. That's what the board law has recognized in Provena. When you look at the Provena decision, which is probably the lead case from the NLRB on the issue of clear and unequivocal waiver, in that case, they relied on, the board relied on, the issue, they relied on the fact that there was a zipper clause, the entire agreement clause, management rights clause, and then the clauses that dealt with the particular issue at hand. They put those three together and said that's what amounted to essentially a waiver. There was no specific language, clear and unequivocal, that dealt with the issue. We would suggest that going back to the deferral argument for a minute, the rights that vested as to the schedule posting came derived from the agreement that the union struck with us. They said, okay, the schedule must be up 14 days in advance. They also said, as soon as it's available. That's the deal they struck with us. I believe that persisted, that deal, the full part of the deal, and they could have agreed to it and taken it to arbitration. Let me try to focus more particularly so I understand your argument. You do agree that there's nothing in the CBA that says, as it might, with respect to our right to set the schedule or to, just set the schedule, that will persist after the expiration of the date of this agreement. You get there by reading the integration clause, the zipper clause. That's right. There's nothing expressed there that says. No, there's not language, and that's what the board relied on to indicate that the contract coverage standard doesn't apply. I would submit that the law tells us that those things persist. Do you agree? Everybody uses contract coverage as if it were a mystic, sort of a mystic doctrine. But all we're really doing is interpreting the contract to see whether the party's intended any rights or obligations to persist after its term, right? That's right, and I think that the contract is interpreted under either analysis, either the analysis of, you know, what an arbitrator would do during the term of the contract, and it's interpreted once you go into what I'll call the hiatus here. Once the hiatus occurred, there is, at that point, you know, a similar analysis. That's why the D.C. Circuit, I don't think they saw this as an issue in Tremont and Wilkes-Barre, the cases that the board in its decision disregarded. You know, I think the D.C. Circuit saw it as a clear case. Well, you know, the contract coverage standard applies both during the contract and during the hiatus because we're working off the same... Let me ask you a question about the other unilateral change. Yes. The background, the driving background check. My understanding from what I saw in the CBA is the CBA says nothing about driver background checks. No, the CBA actually says, and it draws you to the employer's guidebook and the policy that's in the employee's guidebook. So it covers the issue. It just says... Our argument on that is that basically throws it in our hands to draft the policy and change it as we see fit. And that is something frequently... The company operates 197 television stations and it has to have that kind of latitude to be able to make a change within a given station. Point TV is one of its stations. And it's written... Many contract provisions are written that way to give us the discretion to make changes to those policies. But if I refer to your handbook... And again, I'm not sure how the case comes out. But refer to your handbook. There's nothing in there that says that our right to make these changes will persist after the expiration of a collective bargaining. Correct? No, it per se wouldn't. I can't... It's not in the record. I can't indicate what exactly it would say. But I believe that from the language in the CBA, I think one can derive the thought that we have the right to change it as see fit, whether or not the CBA... It's essentially, since it is a nationwide handbook, the thought would be when the union agrees to that, that they agree to allow us to change it as it affects the... Well, but again, I'm focusing on a very particular question. I have no doubt that you could change it during the term of the CBA. No doubt. Both of the contested things. And I don't think the NLRB contested. The question is, what is there that leads me to think, that would lead me to conclude that the union agreed to give you the power to alter the status quo after the expiration of the CBA? Because we're looking at the contract, trying to figure out whether or not the parties agreed to that. Am I still stuck with the zipper clause in the integration? Yeah, I think that's the genesis for it. I think it would be fair to look at those three... Basically, the two clauses, the management rights clause, the NLRB said, well, now the management rights clause vanishes. That's gone. Well, it's part of the party's relationship at the very least. The extent of it maybe in some way diminishes. I would give them that. Councilor, can I just... Isn't this completely curable? Or are you saying this, you need to have this right because there's no way that the union would bargain with you and give you the right to make changes in some of these, especially these particular terms after the contract expired? Because really this whole thing could be cured if it was expressed in the contract that as to certain operating procedures, the employer had the right to make changes post expiration. I think that's accurate. I think that it could have been cured. It's one of those things. It's a policy, particularly as to the background check that Judge Bolton brings. That issue, as I indicated, nationwide, a change in terms of the policy. Let me ask you a follow up on that too. If suppose, how would it work if suppose post expiration of the policy, a federal law went into effect saying you have to have background checks of your drivers? And you made that change pursuant to the federal law. How would this case have come out? I think the union still perhaps would have jumped. That would have been up to them under the read that the NLRB has given. They could have objected and said, in fact, no, it's a unilateral change. We had reasons to make the change from an insurance perspective. And I didn't think that entered into their analysis, how the NLRB would have viewed it. I see my time is running out. I had one quick question. I think you can answer it in one word. Did you bargain eventually to impasse or was there a new CBA? We bargained to impasse and there's extensive... I submit that this dispute has led to failure to resolve this dispute. So the answer to my question is just, yes, you bargained to impasse. We bargained to impasse. And there's no new CBA. Yes, there's no CBA. Okay, thank you. Thank you. Thank you, council. Okay, I think Mr. Weitz, you're first. Yes, good morning. May it please the court, Eric Weitz on behalf of the National Labor Relations Board. And we have ceded four minutes of our time to the intervener union. This case is ultimately about the board's broad authority to interpret the act. And the narrow question that's before the court is whether the board's decision to say that it's a contract coverage standard does not apply after the party's collective bargaining agreement has expired is simply rational and consistent with the act. Now, the starting point for the analysis, I think, goes back to the Supreme Court's opinion in NLRB versus Katz, which established long ago that while the parties are engaged in bargaining over a new contract, the employer cannot unilaterally change established status quo practices because that tends to undermine the union and constitutes refusal to bargain. Rather, the employer has to give notice to the union and bargain with the union to agreement or good-faith impasse over the change that it wishes to implement. Mr. Weitz, can you help me with the D.C. Circuit case? Tell me what... Are they in conflict with your position? Are they consistent with your position? Are they irrelevant? Tell me... Help me with those cases. Tell me what you think they are. Sure, Your Honor. Well, I think, basically, there's three answers to that. The first is, as the Board observed in its decision here, that when the D.C. Circuit in the Wilkes-Barre opinion sort of impliedly suggested that contract coverage applied there, it's not clear at all. And, in fact, there's no analysis from the D.C. Circuit that any party was challenging that preliminary question. And so the D.C. Circuit did not really grapple with whether contract coverage should apply or not. And I'd note that because the D.C. Circuit's interpretation of its own contract coverage standard does not bind the Board or, of course, this court, at most, that would be a persuasive authority. And to the extent where the D.C. Circuit did not address this issue, we would submit that it's not particularly persuasive. I think the second answer is that the facts of that case are very different to the extent that it's unclear what the D.C. Circuit had in mind. In that case, the union was claiming a right that derived from the expired contract, which required the employer to make these longevity-based wage increases. And so the employer's argument in that case was that the right to these wage increases expired with the contract. This is a very different situation because here we have an established past practice that goes back decades, where for nearly 30 years, the employer and his predecessor would always give four-months notice to employees before posting scheduling notices. Now, I understand that. Here's my difficulty, and the D.C. Circuit cases may be wrong. Do any of them interpret a zipper clause, if you will, and a kind of language about this is the entire contract as extending rights under the contract past the expiration date? No, Your Honor. In fact, it's very well established under board law that a management rights clause does not survive... Well, I know the board's position. I'm trying to figure out what the D.C. Circuit is saying. Your Honor, I'm not aware of specific cases. I'm not aware of the D.C. Circuit ever disagreeing with that very well-established proposition that a management clause is a contractual term that does not define the status quo post-expiration. That was not an issue. It could, though, couldn't it? If you had a management clause that said, and the parties agreed that management will retain the rights to do all these things post-expiration, wouldn't that be a suffice under... I hate the term contract coverage, because all you're really doing is trying to figure out what the party's intended. But wouldn't that show the party's intent to make changes post-expiration? Yes, Your Honor. That point's well taken. Number one, I don't want to misstate board law. There are certain rights that parties... Because the right to bargain is a statutory right, there is some complexities about what can be waived in that way. But I think your point goes to what the board said in its next-door decision here, which is that certainly after expiration, the parties could draft a contract which explicitly states that a particular contractual right of an employer would survive beyond the contract. So, for example, in this case, the parties, assuming they had a right in the first place in the expired contract, which the board doesn't agree with, but they could have written it in a way that suggested that, in explicit language, that even after expiration, the employer retained a contractual right to unilaterally change the scheduling notice policy or to change the driver background policy. But as I believe Counsel for the Employer conceded in the opening argument, there's no language in the contracts here that has that type of explicit language, which is... I think I'm a little confused by this contract coverage because what you're talking about, to me, seems to be a basic just contract interpretation. So I don't under... So this contract coverage thing, all you're looking at is just to see if it's in the contract expressly, whether if... When the contract expires and while they're bargaining before they either reach agreement or impasse, you can provide in the contract that they can unilaterally take certain actions, or you could even provide in the contract, the bargaining contract, that they can unilaterally take certain... The employer can unilaterally take certain actions under, you know, if these conditions arise, federal law changes or something. But all we're doing in applying this thing, which doesn't make any sense to me, is just looking at the contract to see if it has such a provision. Well, Your Honour, I think in answer to that question, I can hopefully simplify the case for the court by providing a little background. First, what the board decided here is that its contract coverage test that it adopted in NV Transportation does not apply in this situation. And, in fact, the contract coverage test is not even at issue in this case, and the court does not need to get into the potentially difficult question of whether the contract coverage test is appropriate, given that this court... I simply don't understand it. If the contract... If the CBA said... Put aside whether some other provision in federal law governs this. If the CBA said, look, you guys are difficult to deal with, and therefore we anticipate when the contract expires we may not have a new CBA right away. In the meantime, it's very important for us to be able to change drug testing procedures to conform to what our insurers want. So the employer will retain the right under the contract post-expiration to change drug testing procedures. You would agree in this case, would you not, that they had that right? Well, the test that the board adopted here... No, just say... Don't tell me what the test the board adopted. I'm giving you a hypothetical. Deal with it. It depends on the language, Your Honor, because the board... Let's assume the language is perfectly drawn. So let's not quibble about how good I am at coming up with hypotheticals. Let's just assume that the contract is designed to ensure that the employer can change drug testing procedures on his own after the contract expires while you're still bargaining towards the next contract. If it said that, wouldn't you agree that under this improperly named theory that the NLRB calls contract coverage theory, that right would persist during the bargaining period? Your Honor, the language would need to be explicit. I know, I know. I don't mean to quibble. I've told you twice that the language is perfect and explicit. Then yes, Your Honor. Okay, assume the language is perfect and explicit. Would the employer retain that right after the contract expired during the bargaining period? That's correct, Your Honor. I don't mean to quibble, but the distinction is important because historically the board and this court applied a clear and unmistakable waiver standard where to show that a union had agreed to waive its right to bargain in a contract, it was not even enough to apply ordinary principles of contract interpretation. The language needed to be clear and unmistakable because the union would be waiving a statutory right. And so in the contract coverage case that the board issued in MV Transportation, it essentially adopted a lower standard where, as Your Honor was saying, it's essentially just interpreting the contract. But I would also submit that that is potentially also a lower standard than what the board said here, consistent with Supreme Court precedent, which is that in the normal course when a party's contract expires, the terms of that contract do not survive absent explicit language. So the board... To get back to Judge Wardlaw's question, at the end of the day, your position is, if we read this contract, it doesn't seem to extend the employer's ability to do these things post-expiration, and therefore the board was correct. If it did explicitly do so, you'd concede that the other side was right, at least as a matter of this contract coverage. That's correct, Your Honor. I mean, that would get into the question of the standard of deference this court owes, of course, to the board having already made a determination that there is no explicit language. But I really don't think the parties are even disputing that this contract did not contain explicit language. Rather, the dispute was over whether the board should have applied a different, perhaps more favorable to the employer's standard by applying its contract cover standard. But again, I think the court simply does not need to get in to any of those intricacies of the law to enforce the board's order here. And I see that I'm nearing the end of my time. If the court doesn't have any further questions, then we would just ask for enforcement in full. Thank you. Thank you, Mr. Weitz. Ms. Yen? Good morning, Anne Yen. May it please the court, representing NABIT CWA Local 51. I believe that the questions that Your Honors have posed are correct in that the parties in the expired collective bargaining agreement obviously did not agree upon any post-expiration right of the employer to implement unilateral changes. The Management Rights Clause and the Integration Clause contain pretty routine language for those types of clauses. There's no unusual language that extends any right to make any unilateral changes after the contract expires. And I would add that... But you do agree that they had the right to make unilateral changes during their term with the CBA as to these two items? Well, no. I don't agree with that. But that's important, because if you think that they couldn't change it during the term of the CBA, then they surely couldn't change it after. But that's not the NLRB thing, is it? As I read the NLRB's decision, and I am supporting enforcement of the NLRB's decision in this case, as I read it, they seem to believe that the Management Rights Clause, if the CBA had still been in effect, would have allowed some unilateral changes. I'm not sure that both of the unilateral changes... But we have to defer to that, don't we? I believe that when it comes to the Board's interpretation of the Act, yes, the Court does need to defer. Am I correct that if during the term of the contract, pre-expiration, if the employer had made these unilateral changes and the union objected, you would then have had to arbitrate them? Yes. If the union... Okay, so if a unilateral change that had been made during the term of the contract and the union felt that it was the change that was prohibited by the terms of the contract, then the grievance procedure would have been the appropriate remedy and there would have been arbitration available. The employer would not be able to refuse to arbitrate in that case. If the union felt that the unilateral change was not covered by the collective bargaining agreement, then the union would file a charge and then the Board would determine whether it was something that was covered by the contract under its new... But post-expiration, I take it, and this is your position on the arbitration, you had no vested rights under the contract. The unilateral changes took place after the contract had expired. You had no vested right under the contract to object to that. You had a right under federal law to object to that, but not under the contract. Correct. There was no grievance that the contract had already expired at the time of the unilateral changes. Let me just change the facts a little, because I want to make sure I understand this arbitration argument. Let's assume the contract had said and assume Mr. White's perfect contract clause. We explicitly and unmistakably and hands up in the air agree that the employer's right to make changes in a schedule persists after the contract expires. And you thought the employer did something wrong under that. That would have to be arbitrated, wouldn't it? After the contract? Because you'd be dealing with a right vested under the contract that persisted after the contract's expiration. Well, in that case, if there was a provision in the contract that extended also arbitration under the grievance procedure past contract expiration, then yes, we would. But that's not what the Supreme Court required. The Supreme Court didn't say we require an expiration. The Supreme Court said you get to arbitrate disputes over rights that are vested, that are over vested rights. And whether those rights are vested is a separate issue. But the Supreme Court doesn't require that the arbitration clause also have a post-expiration continuation, does it? I think that if the grievance if the right to grieve the dispute vests during the contract term because it hasn't expired yet when the grievance arises, or if it is regarding a dispute that arises from a right that has already vested before the contract expired, then yes, the grievance procedure with arbitration does apply, and then both parties would be required to arbitrate it. Whereas if it's a dispute that arises after the contract has expired and it doesn't result from rights that are already vested during the contract, then either party is required to agree to arbitrate the matter. And before my time expires, I also wanted to clarify for the record that the employer did not actually bargain to impasses. But what has happened is that over two years of the union attempting to bargain a successor contract, various unfair labor practices have occurred. Well, that's not that. Unfortunately, I cut off Mr. Pats when he was making his speech about what bad guys you are. So I don't want to cut you off when you make your speech about what bad guys they are. And then the employer would improperly You're going to continue with the speech anyway, though. So anyway, this is a routine matter in which the employer failed to maintain the status quo during bargaining, which is required by the act and then and has also committed other unfair labor practices. But I understand we don't want to get into that here. But no, the employer is not bargaining impasses in this relationship. You agree there's no new CBA? What's that? There's no new CBA? Absolutely not. You agree with Mr. Pats on that? And the parties are back at the bargaining table now. Yes. Okay. Thank you. Right. Thank you, counsel. Mr. Pash, I'll give you a couple of minutes to respond. Thank you, Your Honor. I would just add that there is not an agreement. We are bargaining. That is impasse was not established fully in any respect. In terms of the other issues, I would just simply address the opening issue I raised. I do believe that these are vested rights under the agreement. It's a fine line between Nolde Brothers and Lytton. In Lytton, the four dissenting judges felt that the rights involved there to seniority privileges, essentially on layoff, were vested. And they argued strenuously that they should have been able to arbitrate those grievances. Here, the union, for whatever reason, chose to pursue this route instead of filing grievances and raising this issue as it's been raised. And here we are three years later. I guess that should not be national labor policy to lead things in that direction. Arbitration is there for a reason under Steelworkers Trilogy and under Nolde Brothers. There should have been arbitration here. We wouldn't be here today, that's for sure. I thank you and I ask that this court deny enforcement of these orders and also if they see merit to the orders at all, that they defer the case to arbitration. All right. Thank you very much, counsel. NLRB board versus Nexstar Broadcasting is submitted and this session of our court is adjourned for today. Thank you very much.
judges: Wardlaw, Hurwitz, Bolton